**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

Filed/Docketed
Sep 04, 2015

IN RE:

MICHAEL L. McCUTCHEN,                                    Case No. 14-11601-M
                                                                              Chapter 7
                            Debtor.

**MEMORANDUM OPINION**

*"If you don't ask, you don't get."*[1]

The United States Bankruptcy Code (the "Code") and the Federal Rules of Bankruptcy Procedure (the "Rules") contain a detailed set of priorities and procedures relating to claims in Chapter 7 bankruptcy cases. Among other things, the Rules set deadlines for the filing of claims. Creditors that do not file claims in Chapter 7 cases get no money from the bankruptcy estate. Creditors that file claims after the deadline go to the end of the line. In most cases, filing a late claim has the same effect as filing no claim at all: the creditor leaves empty-handed.

Michele M. Ingram and William Dennis Ingram (the "Ingrams") are creditors of Michael L. McCutchen ("McCutchen"), the debtor in this Chapter 7 case. The Ingrams have a large state court judgment against McCutchen. They are represented by counsel and were given proper notice of the deadline for filing a proof of claim. The Ingrams failed to file a proof of claim, missing the deadline due to a calendaring error. Prior to the expiration of the claims deadline, the Ingrams filed an adversary proceeding against McCutchen seeking to deny his discharge or, in the alternative, have the debt owed to them declared non-dischargeable. This adversary proceeding remains pending.

The trustee in this case has money to distribute. The Ingrams want to share in the

---

[1] The quotation is most often attributed to Mahatma Gandhi. I first heard those words from my father many years ago. Immediately after he said them to me, he told me no, proving yet again that the corollary to Gandhi's maxim (i.e., if you ask, you get) is not necessarily true.

distribution.  In an effort to avoid the consequences of failing to timely file a claim, the Ingrams have

filed two motions seeking an order of this Court allowing them to file a formal claim out of time,

and, far more importantly, to have the claim treated as if it were timely filed.  They present three

theories in support of their request:  (1) the failure to timely file the claim was the result of

"excusable neglect" by their counsel; (2) the adversary proceeding should be treated as the functional

equivalent of a proof of claim; and (3) because no one has objected, the Court should grant their

request as a matter of right.  The first theory has been abandoned.  The last theory is unsupportable.

The remaining question is whether an action that seeks to preserve a judgment so that it may be

collected from a debtor after a bankruptcy case is over constitutes a claim against the bankruptcy

estate.  The following findings of fact and conclusions of law are made pursuant to Federal Rule of

Bankruptcy Procedure 7052, made applicable to this contested matter by Federal Rule of Bankruptcy

Procedure 9014.[2]

## Jurisdiction

This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334(b), and

venue is proper pursuant to 28 U.S.C. § 1409.[3]  Its reference to the Court is proper pursuant to 28

U.S.C. § 157(a).  This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A) and (O).

---

[2]  The Ingrams and their counsel claim that this is not a contested matter for purposes of
the Code and the Rules because no one has objected to their request and it is therefore not
contested.  The Court disagrees for reasons it shall explain.

[3]  Unless otherwise noted, all statutory references are to sections of the United States
Bankruptcy Code, 11 U.S.C. § 101 *et seq*.

## Background[4]

McCutchen filed his Chapter 7 petition on July 21, 2014.  In his schedules, McCutchen disclosed assets valued at $196,375 and liabilities of $291,160.70.[5]  Karen Carden Walsh ("Walsh") is the duly appointed trustee in his case.  At Walsh's request, the Court established December 29, 2014, as the deadline for filing claims in this case.[6]  A total of $14,419.46 in non-priority unsecured formal proofs of claim were timely filed.  The Ingrams failed to timely file a formal proof of claim.  Since the case was filed, Walsh has collected approximately $30,000 in estate funds.  She expects to have $20,000 available for distribution to unsecured creditors after payment of administrative expenses.

One of the contested issues in this case relates to McCutchen's ownership interest in Linda Mar, LLC ("Linda Mar").  Linda Mar operates a drive-in restaurant in Tulsa, Oklahoma.  Although McCutchen is the sole owner of Linda Mar, he failed to list the company as an asset in his original schedules.  On September 23, 2014, Walsh filed a motion seeking substantive consolidation of Linda Mar and McCutchen, alleging that, for all practical purposes, they were one and the same entity.[7]  McCutchen objected.   The matter was set for evidentiary hearing on January 13, 2015.[8]

On January 12, 2015, Walsh and McCutchen filed a motion seeking approval of a

---

[4]  Much of the background information is taken *verbatim* or nearly so from this Court's prior opinion in *Philadelphia Indemnity Insurance Co. v. Rotert (In re Rotert) and Ingram v. McCutchen (In re McCutchen)*, 530 B.R. 791 (Bankr. N.D. Okla. 2015) (*"McCutchen I"*).

[5]  *Docket No. 1 at 6.*

[6]  *Docket No. 18.*

[7]  *Docket No. 15.*

[8]  *Docket No. 33.*

3

compromise of the substantive consolidation issue.[9]  Under the terms of the compromise, Linda Mar (at the direction of McCutchen) agreed to pay Walsh the sum of $12,500.  In exchange, Walsh agreed to recognize Linda Mar as a separate legal entity.   In addition, Walsh agreed to allow McCutchen to keep his ownership interest in Linda Mar free and clear of any claims of the bankruptcy estate. The compromise was properly noticed.  There were no objections, and the compromise was approved by order of the Court entered on February 10, 2015.[10]  The estate has received the $12,500 payment.  The settlement is now complete.

The other source of litigation in this case focuses on the dispute between McCutchen and the Ingrams.  The Ingrams hold judgments against McCutchen for conversion, attorneys' fees, and costs awarded by the District Court in and for Tulsa County, Oklahoma.[11]  The judgments are in excess of $80,000.  If one looks at the schedules, it appears that the Ingrams and McCutchen's former attorney are McCutchen's only general unsecured creditors.[12]

On October 17, 2014, the Ingrams filed an adversary proceeding against McCutchen seeking to deny his discharge or, in the alternative, have the debts owed them declared nondischargable (the "Adversary Proceeding").  In their complaint (the "Complaint"), the Ingrams allege that McCutchen:

1.      Borrowed money within one year prior to the filing of his bankruptcy petition (and less than three weeks after the Ingrams obtained their judgment against him) and caused the money to be paid to Linda Mar with the intent to defraud his creditors;

---

[9]  *Docket No. 46.*

[10]  *Docket No. 63.*

[11]  *Adv. Proc. No. 14-01054-M, Docket No. 1 at ¶ 6* (alleging the existence and amount of the judgments and attaching copies of same), and *Docket No 5 at ¶ 6* (admitting those allegations).

[12]  *Docket No. 1 at 15–16; Docket No. 37 at 7.*

2.      Failed to keep or preserve the records from which his financial condition and/or transactions might be ascertained, and withdrew significant sums of money from bank accounts without accounting for their use; and

3.      Made several false oaths by failing to disclose his ownership interest in Linda Mar and the existence of various bank accounts in which he held an ownership interest.

On the basis of these allegations, the Ingrams claim that McCutchen should be denied a discharge under § 727(a)(2),(3), and/or (4).  In addition, the Ingrams claim that McCutchen converted two of their motor vehicles and, as a result, the debt owed them as represented by the judgments entered in Tulsa County District Court are non-dischargeable under § 523(a)(2)(A) and/or (6).[13]  The prayer for relief in the Complaint reads as follows:

> Wherefore, Plaintiffs pray that the discharge of the debtor from his debts be denied, and further, determine that the debt of $85,681.09, plus interest, is nondischargable; that Plaintiffs have judgment against the Defendant for $85,681.09, plus interest; and that Plaintiffs have such other further relief as is just, including reasonable costs and attorney's fees.[14]

There is no mention of recovering funds from McCutchen's bankruptcy estate.  McCutchen filed his answer in the Adversary Proceeding on November 19, 2014.[15]  An agreed scheduling order was entered in the Adversary Proceeding on December 15, 2014.

On January 10, 2015, the Ingrams filed a motion for permission to file their proofs of claim out of time, alleging excusable neglect (the "First Motion").[16]  Although styled as a motion for leave to file a proof of claim out of time, the Ingrams actually sought to have a late-filed claim treated as

---

[13]  *Adv. Proc. No. 14-01054-M, Docket No. 1.*

[14]  *Id.* at 6.

[15]  *Id., Docket No. 5.*

[16]  *Docket No. 44.*

timely for purposes of distribution.[17]  McCutchen objected to the First Motion on January 23, 2015.[18]

The matter was scheduled to be heard on February 10, 2015.  On that date, the parties announced that

the matter had been settled and the hearing did not go forward.

On February 16, 2015, the Ingrams and McCutchen filed a joint motion to approve their

compromise (the "Compromise").[19]   Under the terms of the Compromise:

1.      McCutchen was to pay the bankruptcy estate the sum of $5,000;

2.      McCutchen was to withdraw his objection to the First Motion;

3.      The Ingrams would then file a proof of claim in the amount of $85,681.09;

4.      McCutchen would agree that $18,750 of the $85,681.09 owed the Ingrams would not
be discharged, with the understanding that any distribution received by the Ingrams
in McCutchen's bankruptcy case would be credited against this non-dischargeable
amount; and

5.      The Ingrams would dismiss the Adversary Proceeding, paving the way for
McCutchen to receive his discharge.

Notice of the Compromise was given to all creditors and parties in interest.  There were no

objections.

The Court held an evidentiary hearing on the Compromise on April 7, 2015.  At the hearing,

counsel for the Ingrams stated that his clients had spent a significant amount of money litigating with

McCutchen, and made an economic decision to put matters to an end.  The Court received an offer

of proof that McCutchen reviewed the original petition and schedules prior to signing them, and

---

[17]  The Ingrams do not need court permission to file a claim out of time.  The timeliness
of a claim merely affects its priority in distribution.  *See* § 726(a)(2).

[18]  *Docket No. 55.*

[19]  *Docket No. 64.*

6

believed that they were true and correct at that time.  The proffer also included the statement that, after questioning at the first meeting of creditors regarding his assets, McCutchen amended his schedules to include his interest in Linda Mar.[20]  The Court does not know what inspired the amendments.

The Court has reviewed the claims register in this case.  Based upon that review, if the Compromise were approved, and the Ingrams' claim in the aggregate amount of $85,681.09 were allowed as timely filed general unsecured claims, the Ingrams would receive approximately 86% of the funds distributed to general unsecured creditors.[21]

On April 29, 2015, this Court entered its Memorandum Opinion and Order denying approval of the Compromise.[22]  Shortly thereafter, the Ingrams filed their "Motion for Entry of Order Recognizing the Previously Filed Informal Proof of Claims and Granting Leave to Amend, Or, In the Alternative, Motion for Leave to File Formal Proofs of Claims After the Bar Date" (the "Second Motion").[23]  In the Second Motion, the Ingrams maintained that they should be allowed to file a late claim and have it treated as timely filed on the basis of excusable neglect of counsel.  In addition, they added a new theory: the Complaint should be considered a timely filed "informal proof of claim," and they should be allowed to file a formal proof of claim as an amendment thereto.  The

_____

[20]  *Docket No. 37.*

[21]  The Court arrived at this figure by reviewing the claims register, taking the stated amount of the general unsecured claims, adding the proposed amount of the Ingrams' claim to those claims, and then dividing the amount of the Ingrams' claim into that amount.  Obviously, if any of the other unsecured claims are later disallowed, the percentage payable to the Ingrams would increase.

[22]  *McCutchen I.*

[23]  *Docket No. 84.*

7

formal proof of claim would relate back to the filing date of the Complaint, and thus be considered timely.  The Second Motion was not properly noticed, and was denied without prejudice on June 8, 2015.[24]  Later that same day, the Ingrams filed the Second Motion anew (the "Third Motion").[25]  The Ingrams provided all creditors and parties in interest with proper notice of the Third Motion.  The Third Motion drew no objections.

The Court held a hearing on the Third Motion on July 21, 2015.  At the hearing, Walsh testified that she became aware of the Ingrams' judgments against McCutchen on or before August 4, 2014, but did not necessarily know that the Ingrams would assert a claim against the estate.  In closing remarks to the Court, Walsh stated that she was aware of the arguments advanced by the Ingrams in support of the Third Motion, and decided not to object to it.  She did not explain her reasoning.

To the extent the "Conclusions of Law" contains items that should more appropriately be considered "Findings of Fact," those findings of fact are incorporated into the Court's findings of fact by this reference.

## Conclusions of Law

*The Chapter 7 Claims Process – An Overview*

The claims process in a Chapter 7 case is relatively simple.   In the Northern District of Oklahoma, all Chapter 7 cases start out as "no-asset" cases.  The notice of the filing of the bankruptcy case tells creditors there is no need to file a claim unless and until they receive a separate notice from the Court advising them to do so.   If a Chapter 7 trustee locates assets that he or she can

---

[24]  *Docket No. 90.*

[25]  *Docket No. 92.*

liquidate in order to provide payment to creditors, he or she files a notice of assets with the Court requesting the Court set a claims bar date.  The Court enters an order setting the bar date, and the Clerk of the Court provides notice of the claims bar date to all creditors.  Then, and only then, does it become necessary for a creditor to file a claim if they wish to receive a distribution from the bankruptcy estate.

The time for filing a proof of claim in a Chapter 7 bankruptcy case is governed by Federal Rule of Bankruptcy Procedure 3002(c).  Under Rule 3002(c), if the initial notice of the bankruptcy case advises creditors not to file a claim, once assets are discovered the clerk of the bankruptcy court is to give all creditors at least 90 days' notice of the deadline to file a claim.[26]  The notice is quite detailed.  In addition to the deadline, creditors are told how to obtain and file the appropriate form, either electronically or in paper form.[27]  Rule 3002 allows the deadline for filing claims to be

---

[26]  Fed. R. Bankr. P. 3002(c)(5).

[27]  The notice provided to the Ingrams reads as follows:

The initial notice in this case instructed creditors that it was not necessary to file a Proof of Claim. After further investigation by the Trustee, it has been reported that assets have been identified and may be distributed to creditors.

Creditors who wish to share in any distribution of funds must file a Proof of Claim with the Clerk of the Bankruptcy Court on or before **December 29, 2014.**

Claims received after such date will be considered as filed out of time.

A Proof of Claim (Official Form B10) may be filed using the Electronic Proof of Claim program (ePOC), located on the Court's website at www.oknb.uscourts.gov. Choose the tab titled "For Creditors" then choose "File a Proof of Claim". Upon completion of the electronic filing process, you will be able to print a PDF version of your Proof of Claim with a file stamp as proof of filing. Further instructions for filing a Proof of Claim are included on the website.

If you do not wish to file your claim electronically, or do not have access to the

9

extended in very limited circumstances.[28]  The more general rules governing extension of other

deadlines in bankruptcy cases do not apply to the filing of claims in Chapter 7 cases.[29]

Even though it may be referred to as the claims "bar date," the claims deadline in a Chapter

7 case does not preclude the late filing of a claim.  Late filed claims in Chapter 7 cases are

considered as "tardily filed claims,"[30] and may be filed without court permission.[31]  The lateness of

a claim affects not its allowance, but its priority of payment.  Tardily filed claims are paid <u>after</u> all

--------

Court's website, you may obtain the Proof of Claim form (Official Form B10) at any Bankruptcy Clerk's Office or online at the Court's website at www.oknb.uscourts.gov.  This form may be submitted by regular mail to the following address:

U.S. Bankruptcy Court
Room 105
224 South Boulder Avenue
Tulsa, OK 74103

There is no fee for filing a Proof of Claim.

It is not known at this time whether a distribution to creditors will result; however, in order to participate in any distribution, a claim must be filed.

*See Docket No. 18.*

[28]  *See* Fed. R. Bankr. P. 3002(c)(1) (allowing extension of time for governmental unit to file proof of claim upon motion made prior to the expiration of the claim deadline); Fed. R. Bankr. P. 3002(c)(6) (allowing extension of time where creditor was served at a foreign address and the court determines that notice failed to provide creditor with a reasonable opportunity to file a proof of claim).

[29]  *See* Fed. R. Bankr. P. 9006(b)(3).

[30]  § 726(a)(3).

[31]  *See* § 501(a) (authorizing a creditor to file a claim); *see also* § 726(a)(3) (establishing priority for tardily filed claims).  Nothing in either statute suggests that court permission is required in order to file a tardy claim.

timely filed unsecured claims have been paid.[32]   Only claims for fines and penalties, as well as accrued interest on timely filed claims, fall behind tardily filed claims in the food chain of payment.[33]

The claims bar date in Chapter 7 cases serves a valuable purpose.   Under § 704(a) of the Code, a Chapter 7 trustee is charged with expeditiously collecting and liquidating the assets of the bankruptcy estate, and with reviewing claims to determine their validity.[34]   A Chapter 7 trustee cannot file his or her final report until the claims bar date has passed and all claims have been examined.   Nor can he or she examine claims that are never filed.   Most bankruptcy judges (including this one) do not like to see money sitting in bank accounts for extended periods awaiting distribution to creditors.[35]

In the present case, a total of $14,419.46 in non-priority unsecured claims have been timely filed.   If Walsh is correct in her assumption that she will have $20,000 available for distribution to unsecured creditors, then the Ingrams can expect a payment of approximately $5,600 if their claim is treated as a tardily filed claim, rather than the $17,119 they could expect to receive if their claim is treated as timely filed.   Therein lies the predicament.

---

[32]  § 726(a)(3).

[33]  § 726(a)(4).

[34]  *See* § 704(a).

[35]  Holding money for an extended period of time casts a pall on the bankruptcy system and costs money.  Creditors with valid and timely filed claims have a right to expect payment within a reasonable time.  As a practical matter, the longer the money is held, the harder it is to pay.  Oftentimes creditors change addresses and forget to tell the Court. This leads to unclaimed funds sitting in the registry of the Court.  In addition, financial institutions no longer allow Chapter 7 trustees to maintain accounts without cost.  In every Chapter 7 case where money is collected, the financial institution imposes a monthly fee on the depository account used in that case.  Every month that goes by without a distribution to creditors reduces the amount of money available to creditors.

*The Doctrine of "Excusable Neglect" and the Chapter 7 Claims Process*

In each of the Motions, the Ingrams argue that they should be permitted to file their claim out of time under the doctrine of "excusable neglect" as outlined by the United States Supreme Court (the "Supreme Court") in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership.*[36]  The Ingrams abandoned this theory at the July 7, 2015, hearing on the Third Motion. They were wise to do so.  *Pioneer* was a Chapter 11 case.  In *Pioneer*, the Supreme Court held that the doctrine of excusable neglect does not apply to the late filing of claims in Chapter 7 cases, looking at the differing policies in the two Code chapters:

> Contrary to petitioner's suggestion, this flexible understanding of "excusable neglect" accords with the policies underlying Chapter 11 and the bankruptcy rules. The "excusable neglect" standard of Rule 9006(b)(1) governs late filings of proofs of claim in Chapter 11 cases but not in Chapter 7 cases.(FN4)    The rules' differentiation between Chapter 7 and Chapter 11 filings corresponds with the differing policies of the two chapters. Whereas the aim of a Chapter 7 liquidation is the prompt closure and distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of rehabilitating the debtor and avoiding forfeitures by creditors.[37]

In the accompanying footnote 4, the Supreme Court grounded its decision firmly in the Rules:

> The time-computation and time-extension provisions of Rule 9006, like those of Federal Rule of Civil Procedure 6, are generally applicable to any time requirement found elsewhere in the rules unless expressly excepted. Subsections (b)(2) and (b)(3) of Rule 9006 enumerate those time requirements excluded from the operation of the "excusable neglect" standard. One of the time requirements listed as excepted in Rule 9006(b)(3) is that governing the filing of proofs of claim in Chapter 7 cases. Such filings are governed exclusively by Rule 3002(c). See Rule 9006(b)(3); *In re Coastal Alaska Lines, Inc.,* 920 F.2d 1428, 1432 (CA9 1990). By contrast, Rule 9006(b) does not make a similar exception for Rule 3003(c), which, as noted earlier, establishes the time requirements for proofs of claim in Chapter 11 cases. Consequently, Rule 9006(b)(1) must be construed to govern the permissibility of late filings in Chapter

---

[36]  507 U.S. 380 (1993) (hereafter *"Pioneer"*).

[37]  *Id.* at 389.

12

11 bankruptcies. See Advisory Committee's Note accompanying Rule 9006(b)(1).[38]

The United States Court of Appeals for the Tenth Circuit recognized the holding of *Pioneer* in *Jones v. Arross*.[39]  Even though *Arross* was a Chapter 12 case, the court expressly noted that the doctrine of excusable neglect does not apply to the late filing of a claim in a Chapter 7 case.[40]  Any argument that the doctrine of excusable neglect applies to the plight of the Ingrams is over before it starts.

This Court would not normally devote much if any time to discussing and rejecting a legal theory abandoned by counsel.  There are two reasons for doing so here.  The withdrawal of the excusable neglect claim was never reduced to writing.  The Court wishes to make it clear to all who review the record in this case that the theory was abandoned.  More importantly, when it comes to the "informal proof of claim" theory, the Ingrams rely heavily upon the premise that the "equities of the case" justify the allowance of their claim as timely filed.  In *Pioneer*, the Supreme Court held that an equitable doctrine may not be used to defeat express restrictions contained in the Rules; i.e., to extend a deadline when the rules do not grant the authority to do so.  The principle is equally applicable to an attempt to defeat the distribution scheme contained in § 726.

*The Complaint as an "Informal Proof of Claim"*

The concept of an "informal proof of claim" has been ably summarized by Judge Janice Miller Karlin of the United States Bankruptcy Court for the District of Kansas:

> Federal Rule of Bankruptcy Procedure 3001(a) defines proof of claim as "a written statement setting forth a creditor's claim. A proof of claim shall conform substantially to the appropriate Official Form."  "Often, in an effort to ameliorate

---

[38]  *Id.* at n.4.

[39]  9 F.3d 79, 81 (10th Cir. 1993) (hereafter *"Arross"*) (and cases cited therein).

[40]  *Id.*

13

what is perceived as a harsh result of strict enforcement of a bar date, courts have deemed something other than a proof of claim to be an 'informal proof of claim' which may be amended." An informal claim is some document that was filed with the Court that is not, and was not intended to be, a proof of claim. The doctrine permits a court to treat something other than an actual proof of claim as an "informal" proof of claim that is timely filed, and thereafter, the creditor is allowed to file a "formal" proof of claim that relates back to the date of the original filing. The party seeking to assert an informal proof of claim bears the burden of proof.[41]

The jurisprudence on the issue of informal proofs of claim is as fascinating as it is diverse. As noted by Judge Robert Grant of the United States Bankruptcy Court for the Northern District of Indiana:

Reading the reported decisions concerning informal claims can quickly lead one to the conclusion that it is a doctrine in need of some discipline or at least clarification. The decisions are not consistent. For every decision which comes to the conclusion that something constitutes an informal proof of claim, one can easily find another saying that it does not. *See e.g., In re Charter Co.,* 876 F.2d 861, 864–65 (11th Cir. 1989)(motion for relief from the automatic stay constitutes an informal proof of claim); *In re Anchor Resources Corp.,* 139 B.R. 954 (D. Colo. 1992) (motion for relief from stay does not constitute an informal proof of claim); *In re Benedict,* 65 B.R. 95 (Bankr.N.D.N.Y.1986) (objection to confirmation is an informal proof of claim); *In re Stewart,* 46 B.R. 73 (Bankr. D. Or. 1985)(objection to confirmation is not an informal proof of claim); *In re Scott,* 67 B.R. 1011, 1013 (Bankr. M.D. Fla.1986) (complaint objecting to discharge and objection to plan constitute informal proof of claim); *In re Holzer,* 5 Bankr.Ct. Dec. (CRR) 19, 20 C.B.C. 227 (Bankr. S.D.N.Y. 1979) (dischargeability complaint may not be used as an informal claim). Given that the issue is a matter committed to the court's discretion, these disparities may not be too surprising: the possibility that two judges looking at similar facts might come to different conclusions is inherent in the nature of discretionary choices. *U.S. v. Williams,* 81 F.3d 1434, 1437 (7th Cir. 1996).[42]

Counsel for the Ingrams argues that *Fink* is the "one case" that has held that an adversary proceeding does not rise to the level of an informal proof of claim.[43] The argument is not well taken; in fact, it

---

[41] *In re Spresser*, 2011 WL 2083964 at *2 (Bankr. D. Kan. May 19, 2011) (footnotes omitted) (hereafter *"Spresser"*), *aff'd*, 2012 WL 124855 (D. Kan. Jan. 17, 2012).

[42] *In re Fink*, 366 B.R. 870, 874 (Bankr. N.D. Ind. 2007) (hereafter *"Fink"*).

[43] *Supplemental Brief on Defendants' [sic] Informal Proof of Claims, Docket No. 105* (hereafter *"Supplemental Brief"*) at 6–7.

is just plain wrong.  As shown in *Fink* and in the discussion to follow, the cases are all over the map.

Most, if not all, of the bankruptcy courts in this circuit dealing with the issue have adopted the five part test for an informal proof of claim described by the United States Court of Appeals for the Tenth Circuit in *In re Reliance Equities, Inc.*:[44]

1.    the informal proof of claim must be in writing;

2.    the writing must contain a demand by the creditor on the debtor's estate;

3.    the writing must express an intent to hold the debtor liable for the debt;

4.    the informal proof of claim must be filed with the Bankruptcy Court; and

5.    based on the facts of the case, it would be equitable to allow the amendment.[45]

The Ingrams argue that this Court is bound by the test outlined in *Reliance*.[46]  While the Court does not necessarily agree that all five parts of the *Reliance* test are the law in this circuit, the Court finds the test contained in *Reliance* to be well-reasoned and generally accepted, and will therefore apply the test to the facts at bar.[47]  Finally, "[w]hether or not an otherwise untimely claim will be allowed to relate back to the date of an earlier informal claim is a matter committed to the court's discretion."[48]

---

[44]  966 F.2d 1338 (10th Cir. 1992) (hereafter *"Reliance"*).

[45]  *Id.* at 1345 (citation omitted).

[46]  *Supplemental Brief* at 8.

[47]  In *Reliance*, the creditor failed the first prong of the test; i.e., it failed to file **any** documents with the bankruptcy court.  The failure to file any documents was fatal to the claimant in that case, and the inquiry needed to go no further.  As a result, this Court respectfully submits that any consideration of the other four factors in *Reliance* was arguably very persuasive *dicta*.

[48]  *Fink*, 366 B.R. at 873; *see also In re Nowak*, 586 F.3d 450, 459 (6th Cir. 2009) (bankruptcy court did not abuse its discretion in failing to allow informal proof of claim based

15

Three of the *Reliance* factors are met.  The Complaint is in writing.  It evidences the Ingrams'

intent to hold **McCutchen** liable for the amount set forth in the state court judgments.  The

Complaint was filed with the bankruptcy court prior to the claims bar date.  Satisfaction of the other

two factors is far more problematic.

The Complaint does not contain an express statement that the Ingrams intended to hold the

bankruptcy estate liable for the amounts set forth in the state court judgments.  Rather, it contains

two very specific requests for relief: (1) denial of McCutchen's bankruptcy discharge; or, in the

alternative, (2) a determination that the amounts owed to the Ingrams by McCutchen not be

discharged in his bankruptcy case.  Under § 727(a), a bankruptcy discharge may be denied when it

is proven that a debtor has concealed assets, committed fraud, lied under oath, or engaged in other

conduct that undermines the bankruptcy process.  Denial of a discharge protects the integrity of the

bankruptcy system.  A judgment of non-dischargeability allows a creditor to continue collection

efforts against a debtor after the bankruptcy process is complete.  Both are totally unrelated to the

claims allowance process.  Payment of claims and discharge of debts are two separate and distinct

aspects of bankruptcy law.

The test in *Reliance* requires that in order for a document to be considered as an informal

proof of claim, it "***must*** contain a demand by the creditor on the debtor's estate[.]"[49] The requirement

represents sound policy. A Chapter 7 trustee is required as a matter of law to examine claims filed

---

upon the equities of the case); *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 607 (6th Cir.
2000); *In re Antioch*, 1999 WL 1295498, 251 B.R. 441 (table) (10th Cir. BAP Dec. 14, 1999).

[49] *Reliance*, 966 F.2d at 1345 (emphasis added).

in a bankruptcy case, and object to claims when it is appropriate to do so.[50]  He or she cannot be reasonably expected to examine each and every document filed in a case in an attempt to divine whether the person or entity that filed the document might consider it a claim against the estate.

The United States Bankruptcy Court for the Western District of Virginia faced an issue similar to the issue presently before this Court in *In re Glick,* a Chapter 7 case.[51]  In *Glick,* Crestar Bank, a creditor, filed a motion for relief from the automatic stay in order to foreclose on its collateral, but never filed a formal proof of claim.  The sale of its collateral did not satisfy the bank's claim, and there was money available for distribution to creditors in the bankruptcy estate.  The bank argued that its motion for relief should be considered an informal proof of claim.  The court, applying the same five part test set out in *Reliance*, denied the bank's request.  Its reasoning is instructive:

> Crestar's motion for relief fails on two counts: First it contains no explicit intention to hold the bankruptcy estate liable for any unsecured claim it might have against the debtor. It requests only that it be permitted to foreclose its security interest in the subject real estate. Second, the motion contains no explicit or implicit claim for a right to participate in the distribution of the assets of the estate. Without these elements, Crestar's motion for relief from stay can not be considered an informal proof of claim.
>
> The Court's conclusion is consistent with Congressional intent in setting up rules of finality which are important for sound, efficient administration of a bankruptcy estate. *Matter of Evanston Motor Co., Inc.,* 26 B.R. 998, 1003 (Bankr. N.D. Ill.1983) (citing *Hoos & Co. v. Dynamics Corp*., 570 F.2d 433, 437–9 (2d Cir.1978)). To effectively administer a bankruptcy estate, a trustee can not be burdened by the uncertainty that would result from liberal allowance of informal proofs of claim through motions for relief from stay which are phrased like Crestar's. The trustee must be able to close a case without the necessity of sifting through every motion for relief in search of potential deficiency and then being required to investigate what

---

[50] § 704(a)(5).

[51] 136 B.R. 654 (Bankr. W.D. Va. 1991) (hereafter *"Glick"*).

> happened at the foreclosure sale. Similarly, creating informal proofs of claim by imputing knowledge to the trustee would burden administration of the estate by requiring the trustee to investigate all rumors of claims before closing the estate. *Cf. In re Davis*, 108 B.R. 95, 99 (Bankr. D. Md.1989) (mere knowledge of the trustee is not enough to constitute an informal proof of claim).[52]

Even though *Glick* dealt with a motion for relief from the automatic stay as a potential informal proof of claim, its analysis and policy choices apply equally where an adversary proceeding is posited as an informal proof of claim.  Chapter 7 trustees should not have to divine the intent of a creditor to hold a bankruptcy estate liable for a claim.  Making an affirmative statement of the intent to hold the estate liable is an easy thing to do.  It is as easy as timely filing a formal proof of claim. Allowing a document that does not contain an express statement that the creditor seeks to hold the bankruptcy estate liable for the amounts claimed injects uncertainty and conjecture into a simple and straightforward process.  It is a bad idea.

The Complaint contains no demand against the bankruptcy estate, a fact the Ingrams acknowledge.  In order to escape this requirement, the Ingrams contend that a demand upon the estate is implicit in the Complaint, especially when taken in context of their other actions in the case. Specifically, the Ingrams argue

> [e]xamining the entire record, there can be no doubt that the Ingram's Adversary Complaint filed on October 17, 2014 together with their Motion for Leave to File Late Proof of Claims (which attached formal proof of claims against the estate) filed on January 10, 2015 (Dkt. 44), made a clear demand on the debtor's estate. The claims were adequately described, and the amount of same was stated therein. The Court, trustee, and debtor were aware of the Ingrams' claims, and knew the Ingrams had a claim against the debtor's estate.  Further, the Ingrams appeared and participated at the meeting of creditors, which occurred prior to the bar deadline, establishing the Ingrams' intent to hold the estate liable.  The knowledge of these claims is demonstrated by the fact that neither the trustee nor the debtor (or any other creditor) objected to the Ingrams' motion to deem their Adversary Complaint an

---

[52] *Id.* at 657–58.

informal proof of claims subject to amendment.[53]

In support of their position, the Ingrams cite a number of cases, all of which lie outside the Tenth Circuit. Many of those cases are not Chapter 7 cases. Many do not apply the test enumerated in *Reliance*. This Court declines to follow them.

The Ingrams ask the Court to consider the filing of the First Motion on January 10, 2015, as evidence of their intent that the Complaint be treated as an informal proof of claim. The Court is unpersuaded for several reasons. The First Motion makes no mention of the informal proof of claim doctrine. Instead, the Ingrams argue that they should be allowed to file a claim out of time because they missed the claims deadline as the result of excusable neglect of counsel. Surely, if the Ingrams or their counsel truly considered the Complaint as an informal proof of claim, they would have so advised the Court in the First Motion, and not waited until after the Court refused to approve the Compromise. Their silence leads the Court to conclude that the Ingrams considered the Complaint to be an informal proof of claim only after other avenues they thought were available to them were foreclosed.

The Ingrams also contend that the Court should consider their conduct after the claims bar date (i.e., the filing of the First Motion, the Second Motion, and the Third Motion) as evidence of their intent that the Complaint act as an informal claim against the bankruptcy estate, citing an Eleventh Circuit case, *In re The Charter Co.*,[54] as standing for the proposition that this Court "SHOULD 'examine other documents and actions of the claimants, ***even if they occur after the bar***

---

[53] *Supplemental Brief* at 5–6.

[54] 876 F.2d 861 (11th Cir. 1989).

19

*date*.'"[55]   The citation is inaccurate.  The court in *The Charter Co.* never used the word "should"; instead it stated that as it considered whether to treat a document as an informal proof of claim, a court "CAN examine the other documents and actions of the claimants, even if they occur after the bar date."[56]  "Can" and "should" are not synonyms.[57]

The United States Bankruptcy Court for the Eastern District of Oklahoma, in a case relied upon by the Ingrams, expressly held that "[t]he only documents that shall be considered are those filed in this Bankruptcy case ***during the claims filing period*** and the Court shall not consider activities or allegations made outside the scope of this very narrow time period in order to establish an informal claim."[58]   Other bankruptcy courts in this circuit have also limited their review of documents filed and actions taken evidencing an informal proof of claim to those documents filed or actions taken prior to the expiration of the original claims bar date.[59]   The restriction makes perfect

---

[55] *Supplemental Brief* at 4 (bold, italic, and underline emphasis in original, small caps emphasis added) (quoting *The Charter Co.*, 876 F.2d at 864).

[56] 876 F.2d at 864 (small caps emphasis added).

[57] Use of the word "can" by the court in *The Charter Co.* makes even more sense when one reads the case cited by *The Charter Co.* in support of its statement.  That case is *In re International Horizons, Inc.*, 751 F.2d 1213 (11th Cir. 1985).  In *International Horizons*, the court affirmed the decision of the bankruptcy court holding that the proofs of claim filed by the United States of America were untimely.  The Court noted that the United States had taken no action to file a claim prior to the claim deadline, and that, even if one considered their actions taken after the claims bar date, those actions did not rise to the level of an informal proof of claim.  Neither *International Horizons* nor *The Charter Co.* stand for the proposition that a bankruptcy court should or must consider actions taken by a claimant after the bar date.

[58] *In re WPRV-TV, Inc.*, 102 B.R. 234, 238 (Bankr. E.D. Okla. 1989) (emphasis in original).

[59] *See In re Boucek*, 280 B.R. 533, 536 (Bankr. D. Kan. 2002) (chapter 12 case); *Spresser*, 2011 WL 2083964 at *4 (Bankr. D. Kan. May 19, 2011) (same); *In re Wynn*, 285 B.R. 344 (table), 2002 WL 1270176 at *5 (10th Cir. BAP 2002) (documents filed after claims bar date

sense.  An informal proof of claim must exist prior to the claims bar date in order to be considered

a timely claim.  If the actions or documents that allegedly constitute an informal proof of claim come

into existence after the claims bar date, the informal proof of claim is just as untimely as a formal

proof of claim filed after the claims bar date.

The Ingrams rely upon several Chapter 11 cases in support of their argument that the

Complaint should be considered an informal proof of claim.[60]  Chapter 11 cases differ significantly

from Chapter 7 cases.  "Whereas the aim of a Chapter 7 liquidation is the prompt closure and

distribution of the debtor's estate, Chapter 11 provides for reorganization with the aim of

rehabilitating the debtor and avoiding forfeitures by creditors."[61]  In Chapter 11 cases, the debtor-in-

possession and the bankruptcy estate are closely aligned.  If creditors are to be paid in a Chapter 11

case, it is to be through a plan that, in most cases, is proposed by the debtor-in-possession.   It is

much easier to understand how a claim made directly against a Chapter 11 debtor-in-possession in

the form of a nondischargeability complaint could be construed to be a claim against the estate that

the debtor-in-possession controls.   In a Chapter 7 bankruptcy case, the estate and the debtor are two

separate and distinct entities.   A claim against one is not a claim against the other.   To the extent the

Ingrams cite cases that blur the distinction between a Chapter 7 debtor and a Chapter 7 estate,[62] this

---

may not be considered an informal proof of claim under *Reliance*).

[60]  The Chapter 11 cases cited by the Ingrams include, in no particular order, *In re WPRV-TV, Inc.*, 102 B.R. 234 (Bankr. E.D. Okla. 1989), *In re Mitchell*, 82 B.R. 583 (Bankr. W.D. Okla. 1988), *In re Int'l Horizons, Inc.,* 751 F.2d 1213 (11th Cir. 1985), *The Charter Co.*, 876 F.2d 861 (11th Cir. 1989).

[61]  *Pioneer*, 507 U.S. at 389 (footnote omitted).

[62]  *See, e.g., In re Scott*, 227 B.R. 832, 834 (Bankr. S.D. Ind. 1998) (noting that the test for an informal proof of claim must evidence an intent to hold the estate liable and finding sufficient

Court respectfully disagrees with the failure to recognize the distinction.

The Ingrams have cited cases from outside the Tenth Circuit holding that a dischargeability complaint may rise to the level of an informal proof of claim in a Chapter 7 case. Two of the cases are from Florida, where the informal proof of claim doctrine does not contain a requirement that the informal proof of claim state an express intent to hold the estate liable.[63] One is from California, where the only requirement for an informal proof of claim was that it demonstrate an intent to hold *the debtor* liable for the claim.[64] None of these cases are persuasive when measured against the test outlined in *Reliance*.

On the other hand, the most recent decision in this Circuit to address the issue held that a dischargeability complaint does ***not*** constitute an informal proof of claim.

> The final document FSB contends could act as an informal proof of claim is the adversary complaint it filed seeking to except the debt owed to it from Michael Spresser's discharge pursuant to § 1228(a)(2) and § 523(a)(2)(B). As with the objection to exemptions and the stay relief motion, the adversary complaint was submitted to the Court in writing. In addition, the adversary complaint clearly indicates an intent to hold Debtor, Michael Spresser, liable on the debt. Clearly, the only reason for filing a dischargeability complaint in a bankruptcy proceeding is if the creditor intends to seek repayment of the debt directly from a debtor.

> The Court finds, however, that as with the motion for relief from stay, the complaint in the adversary proceeding does not in any manner make a claim upon the bankruptcy estate. The complaint seeks "an order denying Debtor Michael John Spresser any discharge of his indebtedness to FSB; and that the Court award such other and further relief as it deems just and equitable." FSB, through the complaint,

---

a statement in an adversary proceeding stating "an intent to hold the Debtor liable for the claim.").

[63] *See In re Phillips*, 372 B.R. 97, 100 (Bankr. S.D. Fla. 2007) (requiring that an informal proof of claim "evidence an intent by the claimant to hold ***the debtor*** liable for the claim" (emphasis added)); *In re Boehm*, 252 B.R. 576, 578 (Bankr. M.D. Fla. 2000) (same).

[64] *In re Hayes*, 327 B.R. 453, 460 (Bankr. C.D. Cal. 2005).

> clearly intends to try to collect on this debt from Michael Spresser, but at no point does it request a distribution from the bankruptcy estate or make any demand on the bankruptcy estate. It is entirely silent on that issue. Therefore, the Court finds that the adversary complaint does not satisfy the requirements for an informal proof of claim.[65]

Here, as in *Spresser*, the Complaint makes no mention of holding the estate liable for the amounts owed to the Ingrams by McCutchen. The purpose of the Complaint is to preserve the Ingrams' rights against McCutchen after this bankruptcy case is over. Courts within the Tenth Circuit have reached similar results when it comes to motions for relief from the automatic stay,[66] objections to confirmation of Chapter 13 plans,[67] entries of appearance,[68] and objections to financing orders.[69] Much of the analysis in these cases focuses on the fact that the documents at issue failed to contain a statement of intent to hold the bankruptcy **estate** liable for the alleged debt.

The Ingrams rely upon one Chapter 7 case originating in the Tenth Circuit, *Lang v. Lang (In re Lang)*.[70] *Lang* did not involve claim allowance. The issue before the court in *Lang* was whether to withdraw the reference of a dischargeability complaint brought by Dr. Robert Lang against his ex-wife, Marsha McQuarrie-Lang. In addition to the claims brought under § 523, Dr. Lang included state common law claims for fraud against his wife as well. He then moved to withdraw the

---

[65] *Spresser*, 2011 WL 2083964 at *6 (footnote omitted).

[66] *In re Roberts*, 367 B.R. 677 (Bankr. D. Colo. 2007); *In re Anchor Res. Corp.,* 139 B.R. 954 (D. Colo. 1992); *In re Turner*, 2003 WL 23838107 (Bankr. D. Kan. January 2, 2003).

[67] *In re Sorge*, 149 B.R. 197 (Bankr. W.D. Okla. 1993); *In re Antonich*, 251 B.R. 441 (table), 1999 WL 1295498 (10th Cir. BAP Dec. 14, 1999).

[68] *In re Swenson*, 2015 WL 3745307 (Bankr. D. Kan. June 12, 2015).

[69] *In re Commercial Cap. Co.,* 2012 WL 4336150 (Bankr. D. Colo. Sept. 21, 2012).

[70] 166 B.R. 964 (D. Utah 1994) (hereafter *"Lang"*).

23

reference of the complaint to the bankruptcy court, arguing that he had a right to a jury trial of his state law fraud claims and would not consent to a jury trial before the bankruptcy court.  The district court denied the motion for withdrawal of reference, stating that it was "satisfied that Dr. Lang filed an informal proof of claim in the bankruptcy court when, in addition to requesting a determination of dischargeability, he added four counts restating each of his state law claims."[71]  Even though it was decided almost two years after *Reliance*, the court in *Lang* makes no mention of the *Reliance* test.  Nor does the court in *Lang* tell us whether the dischargeability complaint filed by Dr. Lang made any claim against his wife's bankruptcy estate.  To the extent the court in *Lang* ignored *Reliance*, this Court declines to follow its path.  Moreover, because we do not know whether Dr. Lang's complaint sought to hold his wife's bankruptcy estate liable for the debt at issue there, we cannot measure it against the *Reliance* test.  This Court finds *Lang* of little assistance.

The Court also holds that the equities of this case do not favor the Ingrams.  The Ingrams argue that the equities favor them because

> [n]either the trustee, the debtor, nor any other creditors objected to the Ingrams' motion for their informal proof of claims despite numerous opportunities with more than adequate notice. There was no objections [sic] because those parties were obviously aware of the claims by the Ingrams made against the estate, and there would be no injustice or inequitable result in allowing the informal proof of claims to be amended and relating back to date of the informal proof of claim was filed.[72]

The Court will not presume why Walsh or creditors whose distribution would be reduced if the Ingrams' claim were considered timely did not object; maybe they, like the Ingrams in the Adversary Proceeding, are simply tired of this litigation and do not wish to invest further time or

---

[71] *Id.* at 967.

[72] *Supplemental Brief* at 9.

24

money.  There is no dispute that both the Ingrams and their counsel were given proper notice of and were aware of the claims bar date.  As noted in *Reliance*, "the equities do not favor protecting a [creditor] that had numerous opportunities to protect itself."[73]  At least one other circuit court reached the same conclusion.[74]

*The Unopposed Motion and the Role of The Court*

The Ingrams contend that there is no contested matter before this Court because no party has filed an objection to the Third Motion.  They seem to believe that all unopposed relief should be granted without question, and that any action taken by a court in the absence of an objection by an interested party is at best unwise and at worst improper.  The Court respectfully disagrees.  The action taken by the Court in holding a hearing on the Third Motion and ruling upon the same is expressly authorized by the Code.[75]  Bankruptcy courts have an inherent duty to make certain that the operative provisions of the Code and the Rules, as well as controlling precedential authority, are followed, even when the parties remain silent.[76]

---

[73]  *Reliance*, 966 F.2d at 1345.

[74]  *See In re Outboard Marine Corp.*, 386 F.3d 824, 828 (7th Cir. 2004) (rejecting argument that equities favored allowing informal proof of claim in Chapter 7 case where creditor and counsel had proper notice of claims bar date, describing failure to file as a "self-inflicted wound," and noting that "[t]his is not the case of an unsophisticated claimant confused by complex terms in a bankruptcy notice.").

[75]  *See* § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.").

[76]  *See United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 (2010) (bankruptcy courts have a duty not to confirm a Chapter 13 plan that violates Code provisions, even in the absence of an objection by affected creditors).

The weakness in the Ingrams' argument is exposed by a simple hypothetical.  Suppose the Ingrams, instead of latching onto the theory of an informal proof of claim, had chosen to stand upon the First Motion, which advanced only the theory of excusable neglect.  Assume also that the First Motion was unopposed.  As discussed *supra*, the doctrine of excusable neglect does not apply to the late filing of claims in Chapter 7 cases.  The Supreme Court has so ruled.  The United States Court of Appeals for the Tenth Circuit, in a move that should surprise no one, has recognized the binding nature of the Supreme Court's decision.  Should a bankruptcy court ignore the Supreme Court and the United States Court of Appeals for the Tenth Circuit and issue a decision that flies in the face of established and binding precedent simply because no one objects?  Once reduced to writing, the question answers itself.

Finally, even if it had the discretion to do so, this Court is reluctant to grant the Ingrams the relief they seek because to do so would run directly contrary to the Code, the Rules, and *Reliance*.  The Ingrams were given proper notice of the claims bar date.  They failed to file a proof of claim within that deadline, even though they were provided with detailed instructions on how to do so.  The Code states what happens to a late-filed claim in a Chapter 7 case; it is paid after timely filed claims are paid in full.  The Rules limit the ability of this Court to extend the claims deadline in Chapter 7 cases.  There is no basis under the Rules for an extension in this case.  *Reliance* contains a five part test to determine whether a document consititutes an informal proof of claim.  The Complaint fails the test.  The relief sought by the Ingrams, if granted, would annul the authority that controls this Court, and allow them to do indirectly that which is prohibited directly.  No amount of "equity" can justify willful ignorance of controlling law.

26

**Conclusion**

The Third Motion is overruled.  The Ingrams are free to file a proof of claim in this case.  The payment and priority of that claim, if filed, shall be governed by § 726.  A separate judgment consistent with this Memorandum Opinion is entered concurrently herewith.

Dated this 4th day of September, 2015.

BY THE COURT:

TERRENCE L. MICHAEL, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

6919.7